The Honorable Robert S. Lasnik

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WILLIAM A. ZIETZKE,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ) | Case No. MC19-0078RSL<br><br>UNITED STATES' MOTION FOR SUMMARY DENIAL OF THE PETITION TO QUASH AND FOR ENFORCEMENT OF AN INTERNAL REVENUE SERVICE SUMMONS<br><br>NOTE ON MOTION CALENDAR: August 30, 2019 |

The respondent, United States of America, respectfully moves the Court for an order summarily denying the Petition to Quash Internal Revenue Service Summons Served on Bitstamp USA, Inc., filed by the petitioner, William A. Zietzke, and for an order enforcing the summons served on Bitstamp. As explained below, petitioner has failed to present a legally sufficient defense why the summons should be quashed. Moreover, the United States has met all the requirements for demonstrating the validity of the summons and the Court should issue an order to enforce the summons.



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

## I. INTRODUCTION

The IRS is conducting an examination of the federal income tax liability of William A. Zietzke for tax year 2016, including whether Mr. Zietzke's amended federal income tax return for 2016, in which he claims an entitlement to a refund of tax paid based on the removal of two bitcoin transactions, should be allowed. (Declaration of Amanda Snow "Snow Decl.," ¶ 2). Where cryptocurrency is held as a capital asset, its disposition may give rise to capital gain income or loss depending on the taxpayer's acquisition cost. Accordingly, IRS Notice 2014-21 describes how virtual currency, including cryptocurrency such as bitcoin, is treated as property for federal tax purposes.

Mr. Zietzke and his wife timely filed a joint 2016 federal income tax return (Form 1040). That return reported a tax liability of $36,594, which was paid in full. (*Id.* ¶ 10). On August 14, 2017, Mr. Zietzke and his wife filed an amended 2016 federal income return (Form 1040X). The amended 2016 return showed a reduced tax liability of $21,119 and claimed a refund of $15,475. (*Id.* ¶ 11). The only change on the amended return related to the capital gain reported on the Schedule D and Form 8949 attached to the return. The original return reported long-term capital gain from seven transactions involving the sale or disposition of bitcoin and the amended return removed the two largest of these transactions. (*Id.* ¶ 12). The removal of these two transactions reduced Mr. Zietzke's Schedule D long-term capital gain from $104,482 to $410. This reduction in capital gain is the sole basis for the claimed refund. (*Id.* ¶ 14).

IRS records indicate that Mr. Zietzke has used Bitstamp, USA, Inc., a digital currency exchange platform, to conduct bitcoin transactions. In order to determine if those transactions related to the positions in Mr. Zietzke's original and amended returns, the IRS issued a summons to Bitstamp. Mr. Zietzke has challenged the IRS's summons by filing the underlying petition in

this action on June 27, 2019, seeking to quash the summons issued to Bitstamp. Mr. Zietzke alleges that the summons seeks records that are not relevant to the IRS's examination of his refund claim because the summons lacks a temporal limitation, it seeks information beyond what was ordered in a wholly unrelated summons enforcement case, and it calls for the production of information for which he has privacy and security concerns. As explained below, Mr. Zietzke is wrong. All the elements required for denial of Mr. Zietzke's petition, and for enforcement of a summons, are established and the summons directed to Bitstamp should be enforced.

## II. BACKGROUND

Bitcoin is a type of cryptocurrency based on distributed ledger (blockchain) technology.[1] In a distributed ledger technology system, a user creates a cryptocurrency wallet to engage in cryptocurrency transactions. A wallet is a computer file that contains information (software and protocols) used in moving units of a cryptocurrency on a blockchain. When the wallet is downloaded or purchased (as in the case of a hardware wallet), the user prompts software in the wallet to generate a private key. The private key is then used to generate a public key, which, in turn, is used to generate a blockchain address. The private key, public key, and address are linked, but the particular encryption protocols employed to create the public key and address are only one-way, which prevents the reverse engineering of the private key from the address or

[1] *See* Financial Action Task Force Report, *Virtual Currencies Key Definitions and Potential AML/CFT Risks,* June 2014, http://www.fatf-gafi.org/publications/methodsandtrends/documents/virtual-currency-definitions-aml-cft-risk.html; *see also generally* https://en.bitcoin.it/wiki/Main_Page

public key.[2]

A wallet may hold any number of private/public key pairs. Addresses and public keys must be shared with other users in order to conduct cryptocurrency transactions. Private keys, which are used as the last piece in forming the digital signature to conduct a transaction, should not be shared. Sharing of a private key would permit another individual to engage in transactions on the original user's behalf.[3]

All transactions on a cryptocurrency blockchain can be viewed by the public on any computer connected to the Internet. However, the blockchain transactional history generally only reveals the date, time, units, address, wallet ID (from which the address was created), and transaction ID associated with a transaction. The blockchain does not identify the actual identities of the address and wallet owners.

In order to buy cryptocurrency, a user must transfer traditional currency to someone who already has cryptocurrency and wishes to exchange it for traditional currency. This exchange can occur directly with anyone holding cryptocurrency, but also can be handled through businesses known as digital currency exchanges. Such businesses, like Coinbase, Inc., and Bitstamp, trade between cryptocurrencies and traditional currencies or sometimes just between different cryptocurrencies. A digital currency exchange functions much like a traditional currency exchange, except it deals with the conversions of cryptocurrency for traditional currency or vice versa. Digital currency exchanges may also provide wallet services. These

---

[2] *See* David W. Perkins, Cong. Research Serv., IF10824, *Financial Innovation: "Cryptocurrencies,"* (February 2018).

[3] *See* *https://support.coinbase.com/customer/en/portal/articles/2275614-is-a-wallet-address-safe-to-display-publicly-?b_id=13521*

hosted wallet services allow a user to quickly authorize cryptocurrency transactions with another user through the use of a user account held at the exchange. Hosted wallet accounts are accessible through a computer or mobile device like a smartphone.[4]

Mr. Zietzke has told the IRS that he maintained his bitcoin holdings in two separate groups. The first group was his personal holdings which he managed through Armory wallet software. (*Id.* ¶ 24). Mr. Zietzke has represented to the IRS that he engaged in no transactions during 2016 from his Armory wallet. (*Id.*). Mr. Zietzke claims that his second group of bitcoin holdings originated with his deposit of U.S. dollars into his Coinbase account from a personal bank account. (*Id.* ¶ 25). He has told the IRS that the bitcoin he purchased from Coinbase were then either disposed of during 2016 on Coinbase or were transferred during 2016 to his Purse.io account where he disposed of them.[5] (*Id.*). However, Mr. Zietzke's explanations do not reconcile with the information he has provided the IRS.

Specifically, the bitcoin transferred into Mr. Zietzke's Purse.io account do not appear to have come from his Coinbase account. (*Id.* ¶ 27). The IRS has reviewed all of the information it received from Mr. Zietzke and was able to trace some of the Purse.io transactions using the

---

[4] *See* Edward V. Murphy, M. Maureen Murphy, Michael V. Seitzinger, Cong. Research Serv., R43339, *Bitcoin: Questions, Answers, and Analysis of Legal Issues* (October 2015).

[5] Purse.io is a hosted wallet platform that operates as a bitcoin-to-Amazon.com item exchange. Through Purse.io an individual owning bitcoin can register as a "shopper" and submit order requests to the community for goods offered for sale on Amazon. Typically, the order will request receipt of the Amazon item for an amount of bitcoin equal to 95% or less than the listed Amazon price. Individuals seeking to obtain bitcoin can operate as "earners" on Purse.io. An earner will review the orders offered by shoppers and select an order to fulfill. The earner will purchase the ordered item from Amazon with payment methods accepted by Amazon (not cryptocurrency) and will arrange for the item to be delivered to the shopper. Upon delivery, Purse.io will transfer the agreed upon amount of bitcoin to the earner. *See generally* https://purse.io/how-it-works.

transaction IDs listed on the Purse.io information provided. (*Id.*). The IRS was able to verify that the bitcoin held at Purse.io did not come from Mr. Zeitzke's Coinbase account as he had claimed, they appear to have come from a personal wallet. Moreover, the IRS was able to trace some of those coins to other hosted wallet platforms Mr. Zietzke had never told the IRS he used, one of which is Bitstamp. (*Id.*).

Mr. Zietzke has also changed his story. He reported on both his original and amended return that all of the bitcoin used in the relevant transactions were acquired by him during 2011. (*Id.* ¶ 13). More recently however, he claims that the bitcoin used in the five transactions that remain on the amended return were acquired in 2014. (*Id.* ¶ 18). Mr. Zietzke has not, however, provided any evidence in support his claim that the bitcoin were acquired in 2014 or that the two originally reported bitcoin transactions did not actually occur. (*Id.* ¶ 19).

Amanda Snow, an IRS Revenue Agent, is assigned to the aforementioned examination and is authorized to issue IRS summonses. (*Id.* ¶ 3). In furtherance of the examination and in accordance with 26 U.S.C. § 7602, Revenue Agent Snow issued a summons to Bitstamp USA, Inc., on June 7, 2019, directing it to produce for examination books, records, papers, and other data as described in the summons. (*Id.* ¶ 5). Notice of the summons was sent to Mr. Zietzke. (*Id.* ¶ 7).

The information sought by the summons – including account information and correspondence – may be relevant to determine the tax consequences of Mr. Zietzke's bitcoin activity and therefore his correct federal income tax liability for tax year 2016. For example, the summoned account records may reveal whether Mr. Zietzke conducted five or seven (or more) bitcoin transactions in 2016, what bitcoin were used to conduct those transactions, when the used bitcoins were acquired, how the used bitcoin were acquired, and when the relevant bitcoin were

actually used.

All administrative procedures were followed by the IRS in issuing the summons. (*Id.* ¶ 9). Furthermore, the IRS does not already possess the material sought in the summons and there is no "Justice Department referral," as that term is described in 26 U.S.C. § 7602(d)(2), in effect with respect to Mr. Zietzke for tax year 2016. (*Id.* ¶¶ 8, 39).

## III. LEGAL STANDARD

The Internal Revenue Code (26 U.S.C.) directs the IRS to make inquiries into the tax liability of all persons who may be liable to pay any internal revenue tax. 26 U.S.C. § 7601.[6] In order to carry out that mandate, Congress enacted § 7602, which authorizes the IRS to, among other things, issue administrative summonses to inquire. *See* 26 U.S.C. § 7602. The summons statutes – §§ 7602-7613 – provide the IRS with an investigative device that is to be construed broadly in favor of the IRS. *See United States v. Euge*, 444 U.S. 707, 714-15 (1980). Congress's intent was to foster effective tax investigations by giving the IRS expansive information-gathering authority. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).

The United States need only present a *prima facie* case, as described by the Supreme Court in *United States v. Powell*, 379 U.S. 48, 57-58 (1964), for enforcement of a summons or to demonstrate the validity of a summons.[7] The burden is a slight one in order to ensure that the enforcement powers of the IRS are not unduly restricted. *Fortney v. United States,* 59 F.3d 117,

---

[6] Hereinafter, unless otherwise provided, all section references are to the Internal Revenue Code (26 U.S.C.).

[7] Under § 7609(b)(2)(A), the United States "may seek to compel compliance" with the summons in the same proceeding as a petition to quash the summons.



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

120 (9th Cir. 1995). Once that *prima facie* case is established, as is done here by Revenue Agent Snow's declaration, the burden shifts to the petitioning taxpayer (or other contesting party) to demonstrate specific and substantial facts showing that a genuine issue exists as to any material defect in the summons process. The burden on the contesting party is a heavy one. *United States v. Dynavac, Inc.,* 6 F.3d 1407, 1414 (9th Cir. 1993); *United States v. Abrahams,* 905 F.2d 1276, 1280 (9th Cir. 1990); *Liberty Financial Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985). Summons proceedings, whether brought as petitions to quash or to compel enforcement, are "summary in nature." *United States v. Clarke*, 573 U.S. 248, 254 (2014) (internal citations omitted). "[C]ourts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate." *Id.* (quoting *Powell*, 379 U.S. at 56.)

The standards for enforcement of an IRS summons, or for determining its validity in a proceeding to quash, are well established. The United States need only show (1) that the summons was issued for a legitimate purpose, (2) that the summoned data may be relevant to that purpose, (3) that the summoned data are not already in the government's possession, and (4) that the administrative steps required by the Internal Revenue Code for issuance and service have been followed. *Powell*, 379 U.S. at 57-58; *United States v. LaSalle National Bank*, 437 U.S. 298, 313-314 (1978). The requisite showing is generally made by the declaration of the agent who is seeking enforcement of the summons. *Fortney,* 59 F.3d at 1120; *see also, Dynavac, Inc.,* 6 F.3d at 1414*; United States v. Gilleran,* 992 F.2d 232, 233 (9th Cir. 1993). Revenue Agent Snow's declaration clearly and specifically establishes that each of the four elements of a *prima facie* case for the validity and enforceability of the summons has been met.

Mr. Zietzke has a heavy burden if he seeks to avoid enforcement because he must disprove one of the *Powell* factors or show that the summons was issued in bad faith. *United States v. Stuart,* 489 U.S. 353, 360 (1989). Mr. Zietzke must rebut the United States *prima facie* case with specific facts or circumstances from which a court may plausibly infer that some wrongful conduct by the United States exists. *See Clarke,* 573 U.S. at 254 ("Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge.").

## IV. DISCUSSION

### A. The *Powell* Requirements for Summons Enforcement Have Been Met

#### 1. The IRS issued the summons for a legitimate purpose

As stated above, the IRS is conducting an examination of Mr. Zietzke to determine his income tax liability for 2016. The summons to Bitstamp was issued in furtherance of that examination. The Internal Revenue Code specifically authorizes the issuance of summonses for these purposes. §§ 7601 and 7602(a). According to the Supreme Court, the IRS may issue a summons to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)). This is because the federal system of taxation relies on self-assessment and the taxpayer's honest reporting of all information relevant to his or her tax liability. Nonetheless, "it would be naive to ignore the reality that some persons attempt to outwit the system." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). The Declaration of Revenue Agent Snow makes clear that the IRS is conducting an examination of Mr. Zietzke's claim for refund. Examining his claimed entitlement to a refund of tax is a proper purpose for the issuance of a summons. It is well established that if a summons is issued in furtherance of a



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

proper purpose relating to a named taxpayer, it is valid and enforceable. *See, e.g., LaSalle*, 437 U.S. 298; *United States v. Stuckey*, 646 F.2d 1369, 1375 (9th Cir. 1981); *Sterling Trading, LLC v. United States*, 553 F. Supp.2d 1152, 1158 (C.D. Cal. 2008). Mr. Zietzke does not challenge whether the summons was issued for a legitimate purpose and the United States has shown that it was. The first prong of *Powell* is satisfied.

2. The summons seeks information relevant to its purpose

In addition to a legitimate purpose, *Powell* requires that the inquiry of the summons is limited to information and documents that "may" be relevant to that purpose. *Powell*, 379 U.S. at 57-58. The summoned information, which includes documents associated with Mr. Zietzke's account with Bitstamp, may be relevant to the purpose of the investigation. The Supreme Court discussed the appropriate relevance standard in *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984), in which it stated:

> The language "may be" [in IRC § 7602(a)(1)] reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized.

*Id.* at 814 (emphasis in original).

Thus, in applying the *Powell* test for relevance, the question is not whether the records sought will contradict a taxpayer's return, but whether the records "might" throw light upon the matter being investigated. *Id.* at 814-815, n. 11. The IRS need not accept the word of the summoned party that records are not relevant. It is entitled to determine that fact for itself. *See Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 323 (1985). This test poses a "very low" threshold because of the inherent difficulties in forecasting how much use the summoned records will be in determining a taxpayer's liability. *Jatinder Dhillon, a Medical Corp., v. United States,*

No. C 10-04871, 2011 WL 830275, at *3 (N.D. Cal. Mar. 3, 2011). The IRS cannot and need not guarantee that everything summoned will be relevant because, in order to avoid overlooking relevant materials, IRS agents inevitably must look at materials that are not relevant. *United States v. Arthur Andersen & Co.*, 474 F. Supp. 322, 330 (D. Mass. 1979), *appeal dismissed as to one party*, 623 F.2d 720 (1st Cir.), *cert. denied*, 449 U.S. 1021 (1980), *aff'd as to other party*, 623 F.2d 725 (1st Cir. 1980).

Here, the summoned information is relevant for a complete and full examination of Mr. Zietzke's 2016 income tax liability, including his claim that two of the bitcoin transactions reported on his original 2016 return did not really take place. In furtherance of its examination, the IRS is seeking information evidencing that the transactions really did not happen, as well as documentation supporting the capital gain calculation for the five transactions that Mr. Zietzke agrees did occur during 2016. Moreover, as reported on both the original and amended returns, all of the bitcoin used in these transactions were acquired by Mr. Zietzke during 2011 and disposed of by him during 2016 (or later for the transactions removed on the amended return). More recently however, Mr. Zietzke claims the acquisition date of the bitcoin was not 2011, but instead 2014. The IRS must ascertain which year is the correct year.

Mr. Zietzke has also explained that he maintained two different groups of bitcoin – one group maintained through personal Armory software wallets and a second group acquired through Coinbase and disposed of either through Coinbase or through Purse.io (after being transferred over from Coinbase). According to him, the five transactions that he still agrees occurred all relate to the second group of bitcoin that was acquired through Coinbase, while the two removed transactions appear to relate to his personal holdings. His story, however, has changed with respect to the acquisition dates and appears to be wrong with respect to the

Coinbase and Purse.io holdings. With the limited information that Mr. Zietzke has provided, the IRS has been able to verify that the bitcoin disposed of during 2016 using Purse.io did not come from Coinbase. Some of those coins appear to have come from other places including Mr. Zietzke's personal wallets or other digital currency exchange platforms such as Bitstamp.

Accordingly, the summoned information may be relevant to the IRS in determining the merits of Mr. Zietzke's refund claim, specifically whether Mr. Zietzke can properly amend his 2016 tax return to remove certain identified bitcoin transactions from his Schedule D. Moreover, it could provide additional evidence of taxable activity. In short, the summons seeks material that would allow the IRS to determine the tax consequences of Mr. Zietzke's Bitstamp account activity.

*a) The summons is not overbroad*

Mr. Zietzke argues that the summons is overly broad because it lacks a temporal limitation. (Petition at ¶ 13.) To pass constitutional muster, however, all that is required is that the summons describe the documents with sufficient particularity and not be excessive for the purposes of the inquiry. *See Oklahoma Press Pub'g Co. v. Walling*, 327 U.S. 186, 208-09 (1946). "As for specificity, the summons [need only describe] the requested documents in enough detail to inform [the summoned party] of exactly what he was to produce.'" *Abrahams*, 905 F.2d at 1282; *see also United States v. Judicial Watch, Inc.*, 371 F.3d 824, 832 (D.C. Cir. 2004); *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) ("[a]n IRS summons is overbroad if it 'does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons.'" (citation omitted)).

The summons identifies the documents or material sought to be produced with the requisite particularity. The summons specifies that the information requested pertains solely to

Mr. Zietzke's account and although the summons does not reflect a time limitation, based upon Mr. Zietzke's representations, Bitstamp would only have information from January 1, 2011 through December 31, 2016. (Snow Decl., ¶ 13).

Mr. Zietzke cites to *United States v. Goldman,* 637 F.2d 664 (9th Cir. 1980) and *David H. Tedder & Assocs. v. United States*, 77 F.3d 1166 (9th Cir. 1996), and encourages the Court to consider whether there is a relationship between what the IRS is investigating and the information sought by the summons. (Petition at 14). The IRS has summoned Mr. Zietzke's information from Bitstamp because it may be relevant to determine the basis in the bitcoin he disposed of in 2016. Moreover, since Mr. Zietzke claims that the bitcoin used in 2016 were acquired before that year (in either 2011 or 2014), the IRS must have information for prior years in order to properly calculate any resulting loss or gain. Unlike in *Goldman,* where the government failed to show how summoned records for years beyond the tax years at issue were relevant (*Goldman*, 637 F.2d at 667), here the IRS has made that showing. (Snow Decl., ¶¶ 13, 18). Further, the facts and holding of *Tedder* are not applicable here. In *Tedder* the question was whether an attorney's client names were relevant to the examination of the attorney's own tax liabilities. *Tedder*, 77 F.3d at 1170. There are no similar issues of fact or law present here.

*b) The Coinbase John Doe summons has no bearing on this summons*

Mr. Zietzke argues that the summons to Bitstamp should be limited in scope. (Petition at ¶¶ 12-19). In support of this argument, Mr. Zietzke likens this summons to a John Doe summons directed to digital currency exchange Coinbase, Inc., in connection with an IRS investigation to identify U.S. taxpayers who had used virtual currency and in order to determine whether those users had complied with the internal revenue laws. In furtherance of that investigation, the district court approved the service of a summons to Coinbase and an enforcement action



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

followed. *United States v. Coinbase, Inc.*, Case No. 17-cv-01431-JSC, 2017 WL 5890052, 120 A.F.T.R.2d 2017-6671 (N.D. Cal. Nov. 28, 2017). The end result of that litigation was that Coinbase was ordered to produce certain categories of information about some of its users. And while Mr. Zietzke is correct that the government narrowed the requests for which it sought enforcement and that the court did not enforce all the narrowed requests, Mr. Zietzke is wrong in his speculation for why that happened. (Petition at ¶ 18). He is also wrong to suggest that the Court should be persuaded by the result in that enforcement proceeding and should similarly restrict the IRS's access to his information from Bitstamp.

The Coinbase summons as narrowed called for the records of 14,355 Coinbase users for which the IRS knew neither the names nor whether they were complying with the tax laws. Here, the IRS knows that Mr. Zietzke has transacted in bitcoin and with Bitstamp and that he has improperly reported his bitcoin activity. He has admitted that much. That is the crux of his refund claim. Accordingly, Mr. Zietzke has put at issue his bitcoin activity. Considering that his claim to a refund is that two transactions he initially reported did not occur and that various supporting details he has provided have either changed or been proven false (year the bitcoin were acquired and which ones were spent and where they came from), the IRS is more than justified in fully examining all aspects of his bitcoin activity and accounts.

Moreover, the district court in *Coinbase* explicitly indicated that despite the limitations imposed on the John Doe summons, those limitations would not necessarily apply where the IRS was issuing a summons for a specific user. *Coinbase*, 2017 WL 5890052, *7 (explaining that "if the Government later determines that it needs more detailed records on a taxpayer, it can issue the summons directly to the taxpayer or to Coinbase with notice to a named user – a process preferable to a John Doe summons."). The IRS is now doing precisely what the district court

indicated it should do.[8]

*c) Mr. Zietzke has no privacy rights in the information collected by Bitstamp*

Mr. Zietzke has no constitutionally protected reasonable expectation of privacy in his account information held by Bitstamp. In *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court expressly held that there is no "legitimate expectation of privacy concerning the information kept in bank records" for Fourth Amendment purposes. *Id.* at 442. The reason is simple: these records are the "business records of" banks, not the "private papers" of the account holder, who "voluntarily conveyed" the account information to the bank and bank employees. *Id.* at 441-442. Moreover, the account holder "takes the risk" that "the information will be conveyed" by the bank "to the Government." *Id.* at 443. As a result, there can be no legitimate expectation that the information will not be disclosed to the government. *See also Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (finding "no legitimate expectation of privacy in information" voluntarily turned over "to third parties"). The Ninth Circuit has repeatedly recognized, and applied, this holding in *Miller*. *See, e.g., United States v. Golden Valley Elec. Ass'n,* 689 F.3d 1108, 1116 (9th Cir. 2012); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 942-43 (9th Cir. 2009); *In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994). And numerous courts have expressly held in the IRS summons context that taxpayers have no privacy interests in their records held by banks and other financial institutions. *E.g. Kelley v. United States*, 536 F.2d 897, 898–99 (9th Cir. 1976); *United States v. Blackwood*, 582 F.2d 1244, 1246 (10th Cir. 1978); *United States v. Dollar Sav. Bank*, 488 F. Supp. 420, 424 (W.D. Pa. 1980)

[8] Mr. Zietzke has not alleged that the IRS has any of his information by virtue of the John Doe summons directed to Coinbase.



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

("These records, being business records in the possession of the banks, and not the private papers of the taxpayer, are not privileged and there is no bar to their production under either the Fourth or Fifth Amendments."). The records held by a digital currency exchange are not entitled to a greater degree of privacy than those of a bank account or credit card holder.

Moreover, it is important to distinguish the items that the IRS is requesting – wallet IDs and blockchain addresses – from what it is not requesting – private keys. Wallet IDs and addresses are items that are safe to share publicly. In fact, sharing this information is necessary to be able to conduct a transaction in bitcoin. An individual is not able to receive bitcoin unless he has shared his blockchain address or wallet ID with a sender.[9] Conversely, private keys should not be shared. Without the private key, wallet IDs or blockchain addresses are incapable of transferring bitcoin.[10] Beyond the wallet IDs and public keys, the summons does request information regarding the creation of the hosted wallet account and certain Know Your Customer (KYC) data that Mr. Zietzke would have provided to Bitstamp upon the opening of the account. This information may be relevant to establish ownership and control over the account. It also may be relevant to identify other accounts that Mr. Zietzke may not have disclosed to the IRS.

---

[9] The summons also requests wallet ID and blockchain address information used by Bitstamp to make transactions for Mr. Zietzke from his hosted wallet. The wallet ID or blockchain address information may be relevant because it provides the only information available to verify both on-chain transactions (through the public distributed ledger) and off-chain transactions conducted on Bitstamp's platform (using Bitstamp's internal ledger records). Both on-chain and off-chain records (from all sources) are necessary to determine whether the bitcoin transactions actually occurred, as well as the correct tax basis for any transaction that has occurred.

[10] https://support.coinbase.com/customer/en/portal/articles/2275614-is-a-wallet-address-safe-to-display-publicly-?b_id=13521



**U.S. Department of Justice**
P.O. Box 683
Washington, D.C. 20044-0683

*d) Mr. Zietzke's concerns about IRS system security are not a reason to find the summons unenforceable*

Mr. Zietzke's concerns about the security of IRS computers and how Bitstamp customers could lose their virtual currency forever are overblown. (Petition at ¶¶ 21-22). First, the summons to Bitstamp does not request any private keys, which are what allow a bitcoin owner to own and spend bitcoin – without these keys the bitcoin cannot be stolen from or by the IRS.[11] Secondly, neither the GAO nor TIGTA report cited by Mr. Zietzke discuss a security breach of the IRS's internal non-public facing computer systems or an exploited vulnerability in the computer code of these systems, which is where the tax return information of taxpayers is stored. (Snow Decl., ¶ 37). Instead, both reports discuss other programs and systems and how the IRS can improve its overall process security and controls for the information it maintains, as well as for the services it offers taxpayers.

Finally, by Mr. Zietzke's logic, the Court would need to halt our whole modern taxation system, because the IRS annually gathers, receives, and securely maintains in digital form billions of financial records concerning hundreds of millions of Americans, all containing highly sensitive and personal financial information, and all of which is protected from unlawful disclosure by the provisions of § 6103. The fact that the IRS would collect a little bit more data about one taxpayer through the use of this summons is not grounds for the Court to find the summons unenforceable. The United States has satisfied *Powell's* relevance requirement.

---

[11] Mr. Zietzke objects that with his wallet ID and public key that the IRS can track him forever. (Petition at ¶ 18). Fundamentally, the IRS is only asking for the same information that Mr. Zietzke routinely provides to other individuals with whom he transacts bitcoin. Any such individual would be in possession of his wallet ID and blockchain address as a result of the transaction. Any such individual would also be able to monitor or surveil his wallets and blockchain addresses in the same fashion that Mr. Zietzke contends the IRS would be able to do.

3. The information sought is not already in the IRS's possession

To satisfy the third *Powell* requirement, the IRS must show that the summoned information is not already in the IRS's possession. Revenue Agent Snow's declaration makes this showing and Mr. Zietzke does not allege that the IRS already possesses the information sought by the summons to Bitstamp. The United States has satisfied the third *Powell* factor.

4. The IRS has followed the required administrative steps

The declaration of an IRS agent is sufficient to establish that all administrative steps have been followed. *See Fortney*, 59 F.3d at 120; *Matter of Newton*, 718 F.2d 1015, 1019 (11th Cir. 1983). Revenue Agent Snow's declaration states that she followed all administrative steps required by the Internal Revenue Code in issuing the subject summons to Bitstamp. Revenue Agent Snow is authorized to issue summonses, and the summons here was properly served and noticed to appropriate parties. The time and place for examination were reasonable within the meaning of § 7605. All proper administrative steps with respect to the summons have been followed. Furthermore, there is no Department of Justice criminal referral in effect, as defined by § 7602(d)(2), with respect to Mr. Zietzke. Mr. Zietzke does not allege that the IRS has failed to follow all the required administrative steps; the United States has satisfied the fourth *Powell* factor.

**B. The Court Should Issue an Order Enforcing the Summons**

Under § 7609(b)(2)(A), in any proceeding to quash a third party summons, "the Secretary may seek to compel compliance with the summons." In addition, the district courts have jurisdiction to order compliance with summonses issued by the IRS under § 7604(a). As described in detail above, Revenue Agent Snow's declaration establishes that the IRS issued an enforceable summons to Bitstamp in connection with its examination into Mr. Zietzke's income

tax liability. The *Powell* factors have been satisfied. Mr. Zietzke has failed to raise a valid basis to quash the summons. Therefore, the Court should issue an order requiring Bitstamp to comply with the summons.

Dated this 2nd day of August, 2019.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*s/ Amy Matchison*
AMY MATCHISON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, DC 20044-0683
Email: Amy.T.Matchison@usdoj.gov
Western.TaxCivil@usdoj.gov
Telephone: (202) 307-6422

BRIAN T. MORAN
United States Attorney
Western District of Washington
*Attorneys for the United States of America*